Messrs. Ingersoll and Rawle, *pro quer.*

Messrs. E. Tilghman and M. Levy, *pro def.*

# Elizabeth Garrat, by her next friend, Andrew Tybout *against* John Garrat.

Court will not suffer a juror to be withdrawn on the trial of an issue of adultery, on a libel for a divorce, without consent. It is not indispensably necessary to name the *particeps criminis* in a libel for a divorce, founded on a supposed adultery.
Where such libel states the adultery to be committed with E. P. and other lewd women unknown, the times and places and attendant circumstances should be specified in a written notice before trial, without requisition ; and if their names should become known, the same should also be specified. The party failing herein, should be confined in the evidence, to acts of adultery committed with E. P.

MOTION to set aside a nonsuit.

The plaintiff filed a libel for a divorce *de vinculis matrimonii*, stating the solemnization of a marriage between her and the respondent, and that he afterwards maliciously and wilfully deserted her for four years and upwards. Pursuant to leave obtained for that purpose, she afterwards filed a second libel, wherein she charged the respondent on the 10th June 1799, at the county aforesaid, and at other times and places, with the commission of adultery with Esther Palmer and other lewd women,

[Garrat *v.* Garrat.]

to the libellant unknown, but whose names she prayed leave to add, when they came to be known.

The respondent in his answer to the first libel confessed the marriage, but denied the malicious and wilful desertion.   To the second libel, saving to himself all objections to the illegality of it, he denied the adultery charged against him ; and recriminated the charge of adultery on the libellant with Benjamin Duffield and other men to him unknown ; and averred that after the charge of adultery made against him, the libellant was reconciled to him.

Issues were joined hereupon ; and the cause came on to trial at Nisi Prius, in Philadelphia, on the 28th August 1804, before SHIPPEN, C. J. and SMITH, J., when a witness was called to establish the adultery of the respondent.   The court upon argument, directed that the witness should be confined to proofs of adulterous conversation with Esther Palmer, named in the libel ; and would not permit him to give testimony of acts of adultery with any other person.

*The libellant's counsel then proposed to withdraw a juror, alledging that they had been taken by surprise, and [245* offered to give the most particular notice of the time and place of the commission of the supposed offence.   But the court said, this withdrawing of a juror in a criminal case, could not be done without consent.

The libellant then suffered a nonsuit, with leave to move to have it set aside.

This motion was argued at the last December term by Mr. Lewis, for the libellant, and Mr. Frazier for the respondent ; and again during the present term, by Mr. E. Tilghman, for the libellant, and Mr. Ingersoll, for the respondent.

Arguments in support of the motion.

Our act of assembly, passed 19th September 1785, 2 St. Laws 384, " concerning divorces and alimony," is partly penal, but in most instances is remedial.   But all laws should be construed in such a manner as that they may be carried into full execution.   Such have been the resolutions of the judges under the statute of Winton, and other statutes.

- The construction contended for by our adversaries would defeat the operation of the act in many cases.   Suppose a person returning home from a long East India voyage, should find his wife six months gone with child ; or a wife receiving the venereal disease from her husband ; how are they to obtain relief, if a general charge of adultery in the libel is not sufficient ?   Receiving information of the name of the party who injured them is but matter of chance.   The peace and comfort of married life should not rest on so slender a foundation.

It is objected, that the charge of the libellant is too general. It is at least equally minute, with the answer.   It details time and place, the name of the female with whom the supposed

[Garrat *v.* Garrat.]

guilt was contracted, including other women to the libellant then unknown. It is special in itself, as much as an indictment need be under such circumstances by the rules of law. As to time, the day laid in an indictment is not material upon evidence, if the proof be of a fact done before the time of finding the indictment. 2 Hawk. c. 46, *s.* 32. As to the place laid, proof of the same crime at any other place in the same county, will maintain the indictment. Ibid. § 34. A place must be set forth, but the essence of the crime consists not therein, but in the adulterous act. It is submitted to the court, whether the naming of the *particeps criminis* in the libel be either essential or regular. In many instances it would be impracticable, because the party may be unknown ; but in all it would be unseemly, because the fairest character of any woman may in this mode, be placed in \*an ignominious view upon record, and she have no opportunity of defending her reputation ; thus would the most envenomed malice or unfounded caprice be fully gratified with impunity. But parties to a suit are not allowed to sport with the feelings of others. Cowp. 734.

An action lies against a hundred, charging a robbery by certain persons unknown. 1 Mallor. Mod. Ent. 150, 153. An indictment for keeping a disorderly house, is framed in the most general terms. Stubb's Cro. Cr. Compan. 287. So on a charge of barratry, Ib. 112, wherein particular facts need not be set forth. 2 Hawk. c. 25, § 59.

The case of Steele *v.* Steele, 1 Dall. 409, will be cited against us. The court there observed, that on the trial of an issue for cruel and barbarous usage by the husband against the wife, notice ought to be given of the facts intended to be proved on the trial, and recommended it for the future practice of the bar, to give notice that between two specific dates, certain acts of cruelty were meant to be shewn in evidence.

We answer that adultery is a specific charge, but that the endangering a woman's life by cruel and barbarous treatment is generally to be collected from a series of distinct facts, which the party should be apprised of before he can be prepared to answer ; and further the court only recommended a future practice in such cases without laying down any rule. The practice has not, that we know of, conformed thereto. If here the respondent had wished a statement of particulars, he ought to have required it. *Indebitatus assumpsit* for goods sold, or money received to the party's use, is very general in its nature. If the defendant wants the items of the account, he is bound to apply for a specification. We are not informed of any rule, enjoining the necessity of notice of particulars previous to the trial, unless in the case of barratry, where the prosecutor is not suffered to go on in the trial, without giving the defendant a note of the particular matters, which he intends to prove against him. 1 Haw. c. 81. § 13. 1 Bac. 281. 5 Mod. 18.

In 6 Mod. 262, it is stated by Harcourt, master of the crown

[Garrat *v* Garrat.]

office, that in the case of barratry, the defendant upon motion, may have a rule to have articles delivered to him of the instances, to which the prosecutor shall be confined upon trial; and in 1 Ld. Raym. 490, GOULD, justice, asserts, that an indictment for barratry being general, and consisting of a multiplicity of facts, the court in justice will compel the prosecutor to assign some particular instances ; and if he proves them, he shall be admitted to prove as many more of them as he pleases, to aggravate the same. The reasoning of Lord HARDWICKE in Clark *v.* Periam, 2 Atky. 337, will be found more applicable to the matter under consideration *than any other case in the books. Suppose the case of an indictment for keeping a common bawdy [247* house, without charging any particular fact, though the charge is general, yet at the trial you may give in evidence particular facts, and the particular time of doing them. The same rule holds as to keeping a common gaming house. The case of barratry differs from all others, on account of the difficulty of drawing the line between pursuing the defendant as a barrator, and following the course of his profession as an attorney. Ib. 339, 340.

Here the adultery with Esther Palmer, and other lewd women, whose names were unknown to the libellant, were put in issue and came on for trial. And though an award be made on a submission of all matters in difference between the parties, it does not preclude either of them from suing on a cause of action subsisting at the time of the reference, upon proof that the subject matter of such action was not laid before the arbitrators, nor included in the matter referred. 4 T. R. 146.

The libellant's counsel moreover rely strongly on the practice of the court, which has prevailed in several instances of divorce. In Fiz *v.* Fiz, Goff *v.* Goff, and in Burk *v.* Burk, (wherein the libel was filed 22d July 1797) upon charges of adultery generally, no persons were named as partners in the guilt; but notwithstanding, evidence of the parties respectively having broken their matrimonial vows was received. This is the first instance wherein the exception has been taken, or the testimony overruled ; and it may well be deemed a surprize on the counsel.

It is not pretended that this nonsuit is final. A new libel may be filed and proceeded upon. If the issues have not been properly or correctly joined, let the pleadings be amended : if notice of the particulars meant to be insisted on at the trial is necessary for the defendant's coming prepared, it shall be given in the fullest detail.

It is no answer to the instances of practice we have adduced, to say, that they were *ex parte,* and passed *sub silentio;* for in such cases, the court are directed by the 3d section of the law, to proceed by the examination of witnesses, on interrogatories, exhibits, or other legal proof. And by the 6th §, it is also provided, that the court shall hear and determine every cause com-

[Garrat v. Garrat.]

menced before them by virtue of this act, as to law and justice shall appertain.

The denial of a new trial will only add fresh irritation to the feelings of the parties, create delay and enhance costs.

On the part of the respondent, it was answered, that nothing could be of more moment to the liberty of the citizen, than a rigid adherence to the rule, of stating charges for criminal offences, *with accuracy and precision. It has been fully shewn, that a variance between the time and place laid in an indictment, and the evidence brought in support thereof, is immaterial; and from thence it is attempted to be inferred, that the name of the party, without whose co-operation the guilt could not be contracted, may well be omitted. Indeed the position attempted to be established goes further, that a crime may be laid to be committed with one person, and then under general expressions, which can convey no idea of a particular charge, and without the smallest intimation of the precise offence to which the proof will be directed on the trial, that evidence should be received to convict a party of a crime, against which he could not possibly shape his defence. It will scarcely be asserted, that upon an indictment for felony, charging a party on a certain day, and at a certain place, with stealing the goods of E. P., and at other times and places with stealing the goods of other persons, to the jurors unknown, testimony would be admitted to establish the latter charge therein.

It is necessary that charges should be fully and accurately designated, to exclude the dangers of arbitrary decision, and to prepare the suspected for their defence. A due adherence to the form of indictments is founded in a prudent and a virtuous principle. 2 Woodes. 554. Offences must be particularly and certainly expressed in indictments, for no one can well know what defence to make to an uncertain charge. 2 Hawk. c. 25. s. 59. 1 Bac. 281.

It has been well remarked, that three things ought to concur in every criminal proceeding. 1st. That the party accused should be apprised of the charge he is to defend; 2dly. That the court might know what judgment was to be pronounced according to law; and 3dly. That posterity might know what law is to be derived from the record. The charge must communicate intelligence to the defendant of the offence, which he is to meet on his trial; otherwise it is bad. 5 T. R. 623, 4.

The offence of barratry, in nature of the thing, consists of the reception of several acts. 1 Hawk. c. 81. s. 11. It is a multiplicity of acts. 1 Lord Raym. 490. It would be too prolix to enumerate them in one indictment; and therefore it is settled to be sufficient to charge a man generally as a common barritor, and before the trial to give the defendant a note of the particular matters, which you intend to prove against him. 2 Hawk. c. 25.

s. 59. A previous motion for this purpose is now exploded : it is the settled course of courts of justice.

It has been contended, that notice of the special facts intended to be proved on trial, extends only to the offence of barratry. But the court have laid down the rule in cases of di-*vorce, as appears by the case of Steele v. Steele already cited. The principle on which the rule was originally [*249 adopted, extends to both cases, and is founded on the first elements of justice. Few issues have been tried on petitions for divorce ; and it does not appear that the recommendation of the court, as it has been called, has not been complied with.

As to the three precedents which have been so much relied on, they fall within the remark of Lord MANSFIELD, of not being professed or deliberate determinations. 4 Burr. 2068. They certainly were not formed, decisive, resolutions upon argument. The terms in which the libels were couched, were in all probability unknown to the court. No defences were made.

As to Atkyns's Reports, they have been refused as authority in the King's Bench. 1 W. Bla. Rep. 571. The rules of evidence are not the same in equity as at law in all cases, owing to the difference of judicatures. 2 Fonbla. 452. Note.

In a late case in 1 Term Rep. 741, it was held, that to publish a man as a swindler was a libel, and actionable ; but that a justification of such a charge must state the particular instances of fraud by which the defendant meant to justify the publication. The reasoning of the judges in this case will be found more fully applicable to the matter under consideration, in point of real principle, than that cited from 2 Atky. 339.

Whoever will peruse Boyd's Judicial Decisions in Scotland, will be fully satisfied, that our act concerning divorces and alimony was extracted from the Scottish law. It pursues the latter minutely, and the same causes of divorce exist in both countries. Boyd 113, 114. The 7th section of our act which provides, "that he or she who hath been guilty of the adultery, "may not marry the person with whom the crime was commit- "ted, during the life of the former husband or wife," is evidently borrowed from the Scotch oath of calumny. Ib. 121, 122. How is this to be legally ascertained, unless the name of the *particeps criminis* be inserted in the libel ? The 8th section of our act contemplates this expressly, when it directs, "that where "any woman shall be divorced as aforesaid, and shall afterwards "openly cohabit at bed and board with the person named in the "petition or libel," she shall be incapable of alienating her lands by deed or will. The intention of the legislature therefore in this particular cannot be mistaken ; and it would be wild to suppose, that the names of women or men are introduced into such libels, from malice or caprice, merely to wound the feelings of innocent persons. In the Scotch precedents, the particular times and places of the offence, and the names of the co-offenders are uniformly mentioned. Boyd 114, 117, 119, 120, 121,

122. And such is our settled form in indictments for adultery, *A libel on the same ground should pursue the same strictness, to give the party accused the same opportunity of a full defence. The act of divorces is highly penal in some of its provisions. The plea of necessity has done infinite injury in criminal cases. The libel here does not charge the respondent with general lewdness, but with specific acts of adultery with a person named therein.

SHIPPEN, C. J. and SMITH, J. who sat on the trial, referred the decision of the motion to the other justices. And YEATES, J. pronounced the opinion of the court, to the following effect.

I perfectly concur in opinion, with the judges who tried the issues in this libel, that it would be highly dangerous to the citizens in general, if they were compelled to answer to criminal charges, without being informed of the specific offences, against which they were called upon to defend themselves.

Common sense is in unison with the constitution, when it declares, " that in all criminal prosecutions, the accused hath a " right to be heard by himself and his counsel, and to demand " the nature and cause of the accusation against him." Declaration of Rights, § 9. At the same time, I fully concur in the sentiment expressed by my brother SMITH, on the trial, that it is not indispensably necessary, to name the *particeps criminis* in the libel for divorce, founded on a supposed adultery. But if it be stated to have been committed with E. P. and other lewd persons, to the libellant unknown, if their names are afterwards known, written notice of them and of times and places should be given to the respondent, a reasonable time before the trial, without requisition. If their names are really unknown, the times, places and attendant circumstances should be contained in the specification, so as to give the party charged a fair opportunity of defence against the accusation. Failing therein, I think the complainant should be precluded from giving particular instances in evidence on the trial, on a general charge. Thus the essentials of justice would be preserved, and the party being forewarned of the specific offence, would have a full opportunity of showing his innocence ; and the feelings of individuals, whose names might be inserted on the record on the slightest grounds, and who have no opportunity of defending themselves, would remain unwounded.

The practice of this court has not conformed to what I have already mentioned to be my ideas on the subject. In some libels, a general charge has been made, and the evidence has gone into particulars. The court have therefore adopted it in those instances, as legal proof under the act. In some cases, the names of the paramours may be wholly unknown, although the proof of *the crime against the party charged may be of the most cogent and unequivocal nature.

We may fairly suppose, that the objection to the evidence of-

[United States *v.* Nicholls.]

fered to the court on the trial, was a surprise on the libellant's counsel.    I should strongly be inclined to adhere to the strict rule of evidence in future.   But viewing the present libel under all its circumstances, and the practice which had before obtained, I am of opinion that the nonsuit should be set aside.   It is admitted that a new libel may be filed, to bring the present matter before a jury.   This would produce delay, and increased expence ; and I think it better for the parties, that the nonsuit be set aside, and the evidence be fully heard in this action on a complete and detailed specification.

BRACKENRIDGE, J. concurred.

Nonsuit set aside.

In December term 1805, the libellant withdrew her second libel for adultery, and the respondent also withdrew his answer thereto, and confessed the fact of wilful and malicious desertion and absence, without a reasonable cause, for the term of four years ; whereupon the parties were divorced, on motion.

Cited in 30 Pa. 420 in support of the proposition that a libel for divorce must set forth " particularly and specially " the causes of complaint ; it is not sufficient under the act of May 8, 1854, to allege, in general terms, that the marriage was procured by fraud, force, and false representations.   Cited for a similar purpose in 64 Pa. 473.
· Cited on the question of notice in 65 Pa. 37.
Cited in 62 Pa. 462 ; 2 Phila. 361.